UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID and CHRISTINE GIERLINGER,        **REPORT AND**
                                        **RECOMMENDATION**
                              Plaintiffs,

v.                                      13-CV-00370(A)(M)

TOWN OF BRANT, et al.,

                              Defendants.

_____

        On April 11, 2013, plaintiffs David and Christine Gierlinger commenced this civil rights action pursuant to 42 U.S.C. §§1983 and 1985 against the defendant Town of Brant and several Town officials in their individual and official capacities.  Complaint [1].[1]  Before me are defendants' motion [9] to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) and (b)(6),[2] and plaintiffs' cross-motion [19] for leave to file an amended complaint pursuant to Rule 15.  These motions, being dispositive, have been referred to me by Hon. Richard J. Arcara for a Report and Recommendation [14].[3]  Oral argument was held on October 24, 2013 [23].

        For the following reasons, I recommend that defendants' motion be granted, and that plaintiffs' cross-motion be granted in part and denied in part.

---

[1]      Bracketed references are to CM/ECF docket entries.

[2]      Although defendants' motion is brought pursuant to Rule 12(b)(1), they assert no subject matter jurisdiction challenge.

[3]      Whether a motion for leave to amend is treated as dispositive depends, in part, on the disposition of the motion. "[D]enial of a motion to amend is dispositive in situations where the denial is based on futility, because such a motion is analyzed under the same standard as a motion to dismiss for failure to state a claim or a motion for summary judgment, both of which are dispositive motions." Children First Foundation, Inc. v. Martinez, 2007 WL 4618524, *4 (N.D.N.Y. 2007), cert. of appealability denied, 2008 WL 25574433 (N.D.N.Y. 2008). However, "it is apparent that permitting an amendment cannot dispose of a claim or defense", and, as such, is considered non-dispositive. Youngman v. Robert Bosch LLC, 923 F. Supp.2d 411, 414  n.1 (E.D.N.Y. 2013).  Since I recommend denying plaintiffs' motion in part, I will treat the entire motion as being dispositive.

**BACKGROUND**

Plaintiffs, residents of the Town of Brant, New York, allege that they had "launched a website to publicize problems with the town government", and in the 2009 election supported candidates running against defendant Roseann Turner, a town councilwoman, and defendant Leonard Pero, the town supervisor and police commissioner. Proposed Amended Complaint [20], ¶¶9, 21, 26-28. Although Pero was re-elected, Turner was defeated. Id., ¶¶27-28.

Plaintiffs further allege that following the election, they attended a town board meeting on November 10, 2009 where plaintiff Christine Gierlinger was "verbally attacked" by town resident Frank Broughton "for her constitutionally-protected free speech critical of town operations". Id., ¶¶30, 35. According to plaintiffs, "Broughton's presentation . . . was apparently arranged and approved of by [defendant Pero], a longtime foe of the plaintiffs who actually assaulted David Gierlinger on a prior occasion". Id., ¶37. Toward the end of the meeting, defendant Turner "started verbally abusing" Christine Gierlinger and threatened her for posting information on her website about Turner's son. Id., ¶¶45-46. Concerned about his wife, plaintiff David Gierlinger followed defendant Turner down the hallway towards the exit and told her "not to threaten his wife". Id., ¶¶50-51.

"Eventually, [defendant Turner] left the building" and "ran into Brant Police Officer Ron Raszka, and, while informing him that an incident had occurred at the meeting, failed to state that she had been harassed by either plaintiff". Id., ¶¶52-53. Officer Raszka then went to the meeting, where no complaints were made about plaintiffs' behavior. Id., ¶54. That night defendant Pero requested the audiotapes of the meeting, which "clearly demonstrate[d] that

the harassment did not occur".  Id., ¶¶56, 63.  Nevertheless, "[o]ver the next several days, the

defendants conspired to initiate false criminal charges against the plaintiffs and enlisted the

support of friends and relatives to supply false supporting depositions alleging that the plaintiffs

had harassed [defendant Turner] at the meeting and that [plaintiff Christine Gierlinger] had

harassed Broughton".  Id., ¶57.  Plaintiffs allege that neither defendant John Giacchino (the lead

police officer and investigator on the case) nor defendant Pero "ever spoke with the plaintiffs or

any witness favorable to the plaintiffs (except for Barbara Daniel) prior to filing charges", and

that they "chose not to secure a supporting from [Ms. Daniel] as it would have been favorable to

the plaintiffs".  Id., ¶¶58-60.

On or about November 24, 2009, plaintiff Christine Gierlinger was charged with

two counts of harassment in the second degree: one count for telling Broughton "feces on your

head" and spraying saliva on his head at the town board meeting, and the other count for calling

defendant Turner a "whore" and  preventing her from leaving the town board meeting.  Id., ¶76.

Plaintiff David Gierlinger was charged with one count of harassment in the second degree for

allegedly opening a door onto defendant Turner while she left the town board meeting.  Id., ¶77.

Plaintiffs were served with appearance tickets and, at their arraignment, a

protective order was issued in favor of defendants.  Id., ¶¶74, 78.  The case was then  transferred

to Hamburg Town Court, where a  non-jury trial on these charges commenced on July 28, 2011.

Id., ¶¶75, 82.  Plaintiffs allege that they were forced to attend approximately 10 court

appearances, including two days of trial.  Id., ¶83.  At the conclusion of the trial, which was

completed on March 22, 2012, plaintiff David Gierlinger was found not guilty, and the charge

brought by defendant Turner against plaintiff Christine Gierlinger was dismissed.  Id., ¶¶82, 86-

87.  Although Christine Gierlinger was found guilty of the complaint brought by Broughton (id.,

¶84), her conviction was reversed and the charge dismissed by Erie County Court Judge Kenneth

Case on September 5, 2012. Id., ¶88.

In opposition to defendants' motion to dismiss their Complaint, plaintiffs seek

leave to file an Amended Complaint asserting four causes of action: (first) Fourth, Fifth and

Fourteenth Amendment claims, pursuant to §§1983 and 1985, for malicious prosecution;

(second) First and Fourteenth Amendment claims, pursuant to §1983, for retaliation for the

exercise of the right of free speech; (third) First and Fourteenth Amendment claims, pursuant to

§§1983 and 1985, for violation of the right to political speech and association; and (fourth) state

law malicious prosecution.  Whereas the first three causes of action are asserted against the

individual defendants only ([20], ¶¶89, 98, 104), the fourth cause of action is asserted against the

individual defendants and the town.  Id., ¶110. The individual defendants are sued in their

individual and official capacities. Id., ¶¶9-11.


## ANALYSIS

### A.      Defendants' Motion to Dismiss the Complaint

Although plaintiffs "believe that the . . . complaint is sufficiently detailed to

survive a motion to dismiss, in an excess of caution" they have moved for leave to amend the

Complaint "to add details on some of the issues raised in the motion to dismiss" Ostrowski

Affirmation [20], ¶12.  The proposed Amended Complaint also removes two causes of action

contained in the Complaint.  Id., ¶15.

Since I interpret plaintiff's cross-motion for leave to file an Amended Complaint as conceding that the Complaint may be dismissed, I recommend that defendants' motion to dismiss the Complaint be granted, and will focus upon whether amendment should be allowed.

**B.      Plaintiffs' Cross-Motion for Leave to Amend**

Although Rule 15(a)(1)(B) permits the amendment of a complaint as a matter of course within 21 days after service of a motion to dismiss pursuant to Rule 12(b), plaintiffs' cross-motion for leave to amend was not filed until more than 21 days after service of defendants' motion to dismiss. Therefore, plaintiffs must resort to Rule 15(a)(2), which states that the "court should freely give leave when justice so requires".  "In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should . . . be freely given." Foman v. Davis,  371 U.S. 178, 182 (1962). *See also* Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991) ("[I]it is rare that such leave should be denied . . . , especially when there has been no prior amendment").

Relying upon the addition to the proposed Amended Complaint of the allegation that Christine Gierlinger's conviction was overturned on appeal (an allegation not contained in the Complaint), defendants argue that they "made arguments in their initial motion to dismiss under the assumption that Christine Gierlinger had been convicted . . . and in so doing have been prejudiced by plaintiffs' attempt to include these new allegations in their amended complaint". Defendants' Opposing Memorandum of Law [21], p. 3.  Plaintiffs' counsel explained at oral

argument that the proposed Amended Complaint [20] mistakenly states that the conviction was

overturned in September 2012 (id., ¶88), rather than September 2013 - *after* the Complaint was

filed.  Under these circumstances,  I conclude that there is no basis to deny plaintiffs' cross-

motion on the grounds of prejudice.

Defendants' remaining arguments are directed at the futility of the proposed

amendments.  "[L]eave to amend will be denied as futile only if the proposed new claim cannot

withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt

that the plaintiff can plead no set of facts that would entitle him to relief."  Milanese v.

Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).

1. **First  Cause of Action:  Malicious Prosecution in Violation of the Fourth, Fifth and Fourteenth Amendments**

a. **42 U.S.C. §1983**

"In order to maintain a Section 1983 action, two essential elements must be

present: (1) the conduct complained of must have been committed by a person acting under color

of state law; and (2) the conduct complained of must have deprived a person of rights, privileges,

or immunities secured by the Constitution or laws of the United States."  Pitchell v. Callan, 13

F.3d 545, 547 (2d Cir.1994).  Defendants challenge both elements.

### b.   Were Defendants Acting Under Color of State Law?[4]

### i.   Defendant Turner

Defendants argue that defendant Turner was not acting under color of state law since her complaints against plaintiffs were filed as an ordinary citizen, rather than as a town councilwoman.  Defendants' Opposing Memorandum of Law [21], pp. 4- 5.  However, even if she was acting as a  private citizen, a private party defendant may be  a state actor where "engaged in a conspiracy with other state actors under §1983".  Anilao v. Spota, 774 F.Supp.2d 457, 499 (E.D.N.Y. 2011).  Although "[v]ague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed", "[a] plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." Id.

The proposed Amended Complaint contains sufficient allegations of defendants' motivations for conspiring to inflict injury upon plaintiffs and their collusion to do so.  For example, it alleges that plaintiff Christine Gierlinger posted information about defendant Turner's son's criminal record on her website (proposed Amended Complaint [20], ¶¶22-23) and supported a candidate who defeated defendant Turner. Id., ¶¶26, 28.  It also alleges that defendant Pero was also a "longtime foe of the plaintiffs" (id., ¶¶9, 37), and that defendants "conspired to initiate false criminal charges . . . and enlisted the support of friends and relatives to supply false supporting depositions".  Id., ¶57.

---

[4]       Defendants make the same challenge to the §1983 claims asserted in the Second and Third Causes of Action.

ii.     **Defendant Pero**

Defendants argue that plaintiffs fail to allege "sufficient facts to support the assertion that defendant Pero was acting under color of state law, or that he was personally involved at all in the filing of charges against plaintiffs".  Defendants' Opposing Memorandum of Law [21], p. 4.  I disagree.  The proposed Amended Complaint [20] alleges that he was the town police commissioner (id., ¶9), that he was apparently present at the November 10, 2009 town board meeting that gave rise to the criminal charges (id., ¶54), that he requested copies of the audio tapes of that meeting, which demonstrated that the harassment did not occur (id., ¶¶55, 63), and that he conspired to initiate false charges against plaintiffs. Id., ¶¶55-57. At this stage, these contentions sufficiently allege defendant Pero's personal involvement and that he was acting under color of state law.

c.     **Is a Constitutional Violation Alleged?**

i.     **Fourth Amendment**

Defendants argue that plaintiffs' malicious prosecution claim must be dismissed since there was no "post-arraignment restraint".  Defendants' Supporting Memorandum of Law [9-3], p. 5; Defendants' Reply Memorandum of Law [22], pp. 1-2.  I disagree.

Although plaintiffs were not jailed, they allege that their appearance tickets stated that they were "directed to appear" in court, and that if they failed to appear, a criminal summons for their arrest could issue.  Proposed Amended Complaint [20], ¶79.  They also allege that they were "forced to attend . . . about ten court appearances including two days of a trial" after the

arraignment and were subject to a protective order, which restricted their "liberty".  Id., ¶83 (emphasis omitted).

The Second Circuit has "consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty".  Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013).  See also MacPherson v. Town of Southampton, 2013 WL 6058202, *5 (E.D.N.Y. 2013) ("[W]hile the issuance of a pre-arraignment, non-felony summons that merely requires a later court appearance does not constitute a Fourth Amendment seizure, the requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure").

### ii.      Fifth Amendment

Defendants argue that without allegations of federal action, plaintiffs' Fifth Amendment due process claims must be dismissed.  Defendants' Supporting Memorandum of Law [9-3], p. 4.  I agree.  "The Fifth Amendment only applies to the federal government and cannot provide a cause of action for the plaintiff's claims of deprivation of due process of law by state actors."  Finch v. New York, 2012 WL 2866253, *8 (S.D.N.Y. 2012).

### iii.      Fourteenth Amendment

Defendants argue that plaintiffs were not deprived of any Fourteenth Amendment rights.  Defendants' Supporting Memorandum of Law [9-3], p. 8.  I agree.  "[A] claim of malicious prosecution may not be brought as a substantive due process claim . . . . Furthermore,

any procedural due process claims arising out of the Town's prosecution of [plaintiffs] necessarily fail because [they were] given ample notice and an opportunity to be heard and indeed had the accusations against [them] dismissed." Zito v. Town of Babylon, 534 Fed. Appx. 25, 28 (2d Cir. 2013) (Summary Order). *See also* Singer v. Fulton County Sheriff, 63 F.3d 110, 114 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996) ("the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution"); Kennedy-Bifulco v. Town of Huntington, 2010 WL 6052343, *13  (E.D.N.Y. 2010), adopted 2011 WL 883697 (E.D.N.Y. 2011); McCray v. City of New York, 2007 WL 4352748, *21 n.26 (S.D.N.Y. 2007).

      2.      **42 U.S.C. §1985**

      Defendants argue that plaintiffs fail to a allege a racial or class-based discriminatory animus necessary to support a §1985 conspiracy claim.  Defendants' Reply Memorandum of Law [22], p. 6.  I agree.  To state a §1985 claim, "the conspiracy must . . . be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action'".  Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993).  *See also* Manbeck v. Micka, 640 F.Supp.2d 351, 382 (S.D.N.Y. 2009) ("a Section 1985 conspiracy differs from a Section 1983 conspiracy in that the plaintiff must also provide evidence that Defendants acted in concert with a racial or discriminatory animus").[5]

---

[5]      This analysis and recommendation applies equally to all of plaintiffs' §1985 claims.

### 3.      Qualified Immunity

Defendants argue that defendant Giacchino's conduct is protected by the defense of qualified immunity.  Defendants' Reply Memorandum of Law [21], pp. 6-7.  However, based on the allegations of the proposed Amended Complaint, this defense cannot be resolved in Giacchino's favor at this time.  *See* <u>Anilao</u>, 774 F.Supp.2d at 457, 491-92 ("an arresting officer is entitled to qualified immunity, as a matter of law, only 'if the undisputed facts and all permissible inferences favorable to the plaintiff show that officers of reasonable competence could disagree on whether the probable cause test was met'").

### B.      Second Cause of Action:  First and Fourteenth Amendment Retaliation for Exercise of Free Speech[6]

Defendants argue that this cause of action is time-barred since it was brought more than three years after it accrued upon the initiation of the allegedly false charges against plaintiffs.  Defendants' Supporting Memorandum of Law [9-3], p. 9; defendants' Reply Memorandum of Law [22], pp. 2-5.  Plaintiffs do not dispute that the statute of limitations is three years, that the filing of the false charges occurred outside of the statute of limitations, or that defendants' alleged conduct within the statute of limitations is independently actionable.  Instead, without citing any supporting authority, plaintiffs analogize their malicious prosecution claim to their cause of action for "retaliatory prosecution" and  argue that it is a "continuing tort",

---

[6]      "[T]he right of free speech is embodied in the liberty safeguarded by the Due Process Clause".  <u>Carpenters and Joiners Union of America, Local No. 213 v. Ritter's Café</u>, 315 U.S. 722, 726 (1942).

which continued until the charges were dismissed.  Plaintiffs' Opposing Memorandum of Law

[18], p. 3.

Unlike a claim for malicious prosecution, which accrues when the criminal

charges are terminated in the plaintiffs' favor, plaintiffs' First Amendment retaliatory prosecution

claim accrued when the prosecution was commenced by the filing of the criminal charges.  *See*

Mata v. Anderson, 635 F.3d 1250, 1252 (10th Cir. 2011) (rejecting the plaintiff's "argument that

his First Amendment retaliatory-prosecution claim did not accrue until the charges against him

were dismissed"); Loumiet v. United States, 2013 WL 4852304, *7 (D.D.C. 2013) (same).[7] *See*

*also* Shub v. Westchester Community College, 556 F.Supp.2d 227, 242-43 (S.D.N.Y.), recon.

denied, 2008 WL 1957731 (S.D.N.Y. 2008) ("Under federal law [a First Amendment retaliation]

claim accrues once the plaintiff knows or has reason to know of the injury that forms the basis of

the action").

"[I]f a plaintiff has experienced a continuous practice and policy of

discrimination, the commencement of the statute of limitations period may be delayed until the

last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir.

2001), cert. denied, 536 U.S. 922 (2002).  "However, the federal courts look unfavorably on

continuing violation arguments, and have applied the theory only under 'compelling

circumstances,' such as where the unlawful conduct takes place over a period of time, making it

difficult to pinpoint the exact day the violation occurred; where there is an  express, openly

espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct

---

[7]     *Compare with* Haagensen v. Pennsylvania State Police,  2009 WL 790355, *4 (W.D.Pa.
2009) (concluding that the plaintiff's " First Amendment retaliatory prosecution claim did not accrue
until the charges against her had been dismissed").

such that the plaintiff only belatedly recognizes its unlawfulness." <u>Yip v. Board of Trustees of State University of New York</u>, 2004 WL 2202594, *4 (W.D.N.Y. 2004) (Curtin, J.), <u>aff'd</u>, 150 Fed.Appx. 21 (2d Cir. 2005) (Summary Order).[8]

Plaintiffs' proposed Amended Complaint alleges that the defendants filed "false charges and continued until the time of the trial the prosecution of such charges . . . in retaliation for their political speech". Proposed Amended Complaint [20], ¶98 (emphasis omitted). "On information and belief", plaintiffs allege that "throughout the prosecution of the charges, the defendants supported the continuance of the prosecution and never asked the court or prosecutor to unconditionally dismiss the charges". <u>Id</u>., ¶80 (emphasis omitted).

However, plaintiffs fail to allege that defendants undertook any specific retaliatory acts after initiating the prosecutions beyond perpetuating the prosecutions that they initiated. "The mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation." <u>Yip</u>, 2004 WL 2202594 at *5. Therefore, I conclude that plaintiff's claims are time-barred. *See* <u>Mata</u>, 635 F.3d at 1253 (the defendant's participation in subsequent criminal

---

[8] Although not raised by defendants, I question whether the continuing violation doctrine can even apply here to plaintiffs' claims of First Amendment retaliation which do not arise from their employment or from complaints of discrimination. "The continuing-violation exception is most often invoked by plaintiffs alleging claims under Title VII, but it is also applied by courts in employment discrimination cases brought under Sections 1981 and 1983". <u>Bermudez v. City of New York</u>, 783 F.Supp.2d 560, 574 (S.D.N.Y. 2011). "[T]he weight of authority in the Second Circuit appears to hold that the continuing-violation doctrine may not be applied to Section 1983 civil rights claims that do not involve allegations of discrimination." <u>Koehl v. Greene</u>, 2007 WL 2846905, *9 (N.D.N.Y. 2007); *See also* <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 127-28 (3d Cir. 2006) (The "rule that individually actionable allegations cannot be aggregated is of particular import in the context of First Amendment retaliation claims. First Amendment retaliation claims are always individually actionable, even when relatively minor").

proceedings did not amount to a continuing violation).[9]  *Compare with* <u>Starkey v. Birritteri</u>, 2012 WL 5921044, *3 (D.Mass. 2012) (declining to dismiss First Amendment retaliation claim where "Starkey . . . alleged that Birritteri remained involved in the investigation of Starkey and continued to provide false information and false testimony, thereby prolonging Starkey's prosecution. Further factual development will determine whether Birritteri's actions within the limitations period can sustain Starkey's First Amendment claim or can establish a single continuing violation.  For now, it is enough that Starkey has plausibly alleged that Birritteri maliciously advanced the prosecution in order to suppress Starkey's speech").[10]

Alternatively, plaintiffs argue that "[e]ven if the tort would normally have accrued on the date the charges were filed, courts should under principles of federalism and abstention and/or equitable tolling, toll the statute until the charges have been dismissed . . . . To hold otherwise would wreak havoc on state court criminal prosecution by encouraging mischievous and clever criminal defendants to file federal lawsuits against their complainants, and even against

---

[9]      Defendants rely upon <u>Washington v. County of Rockland</u>, 373 F.3d 310, 317-18 (2d Cir. 2004).  Although addressing the continuing violation doctrine in the context of allegedly discriminatory disciplinary charges brought by a municipal employer, <u>Washington</u> is instructive.  The disciplinary charge in <u>Washington</u> was filed outside of the limitations period and the plaintiff sought to employee a continuing violation theory on the grounds that "defendants' continued prosecution of the disciplinary charges amounted to an ongoing illegal practice". <u>Id</u>. at 317. Rejecting this argument, the Second Circuit concluded that since  the "prosecution of the charges to ultimate disposition is wholly separable from the act of initiating the charges", there was no basis  to  characterize "this series of separate acts . . . as an ongoing policy of continuous discrimination sufficient to toll the applicable statute of limitations". <u>Id</u>. at 318.

[10]      Even if I agreed with <u>Starkey</u>, it is distinguishable from the circumstances here.  The plaintiff in <u>Starkey</u> had "explicitly disclaim[ed]" that he was asserting a retaliatory prosecution claim and had made specific allegations about the defendant's advancement of the prosecution.  By contrast, plaintiffs do not make any specific allegations about defendants' alleged advancement of the prosecution, other than to allege "[o]n information and belief" that they supported the continuance of the prosecution (proposed Amended Complaint [20], ¶80) and request that I take judicial notice of the fact that in "local criminal courts" complainants are consulted on their preferred disposition of the case. Plaintiffs' Opposing Memorandum of Law [18], p. 3.

their criminal court judges (!)".  Plaintiffs' Opposing Memorandum of Law [18], p. 4.  In view of the previously discussed authority, this argument is unpersuasive.

**C.     Third Cause of Action: First and Fourteenth Amendment Violations of the Right to Political Speech and Association**

This cause of action alleges that defendants denied "plaintiffs their right to be free of false criminal charges and retaliation for political speech, activism and affiliation".  Proposed Amended Complaint [20], ¶104.  Defendants argue, *inter alia*, that this cause of action, like the second cause of action, is barred by the statute of limitations. Defendants' Supporting Memorandum of Law [9-3], p. 11; Defendants' Reply Memorandum of Law [22], pp. 5-6.

At the latest, this cause of action also accrued when plaintiffs were served with their appearance tickets.  For the reasons stated above, I conclude that this cause of action is time-barred, as there is no basis to apply the continuing violation doctrine or to otherwise toll the accrual of the statute of limitations.[11]

**D.     Fourth Cause of Action:  State Law Malicious Prosecution**

Relying on  Monell v. New York City Department of Social Services, 436 U.S. 658, 691 (1978), defendants argue that the state law malicious prosecution claim must be dismissed against the Town because plaintiffs have failed to allege an official custom or policy of malicious prosecution.  Defendants' Opposing  Memorandum of Law [21], p. 3.  However, Monell does not apply to plaintiffs' state law claims.  *See* Colon v. Tucciarone, 2002 WL

_____

[11]     The statute of limitations for a claim brought pursuant to §1985 is also three years.  *See* Paige v. Police Department of City of Schenectady, 264 F.3d 197, 199 (2d Cir. 2001).

32502105, *3 n.6 (D.Conn. 2002) ("<u>Monell</u> analysis applies only to municipal liability claims founded on §1983 (*i.e.*, federal claims): plaintiff's state law claims are unaffected by <u>Monell</u> and its progeny"). Therefore, this claim should not be dismissed.

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss the Complaint [9] be granted, and that plaintiff's cross-motion for leave to amend [19] be granted to the extent the first cause of action alleges a §1983 claim for malicious prosecution, in violation of the Fourth Amendment, and the fourth cause of action alleges a state law malicious prosecution claim, but otherwise be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by March 14, 2014 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed

findings and recommendations to which objection is made and the basis for each objection . . .

supported by legal authority", and must include "a written statement either certifying that the

objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge".  Failure to comply with these

provisions may result in the district judge's refusal to consider the objections.

Dated: February 25, 2014

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge